[No. 5808.  Decided December 26, 1905.]

ROBERT Y. SLATER et al., Appellants, v. JOHN GRIBBEL et al., Respondents.[1]

EQUITY—CLAIM TO EQUITABLE INTEREST IN PURCHASE OF LAND—FRAUD OF PLAINTIFF—RELIEF IN EQUITY. No standing in a court of equity is shown by one who fraudulently misrepresents that he is the owner of coal lands, and after securing an option for $100 for the purchase of the property at $35,000, further fraudulently represents that he has entered into a contract for its purchase at $100,000, upon which $15,000 had been paid, and thereby and by agreeing to organize a corporation and float bonds to reimburse investors for advances, secures advances to the extent of $50,000 which he converts to his own use, and refuses to either purchase the property or pay the taxes; and the persons whom he has defrauded may, to protect themselves, purchase the property independently and for their exclusive benefit, even before the time for his option has expired.

Appeal from a judgment of the superior court for King county, Bell, J., entered January 7, 1905, in favor of the

[1]Reported in 83 Pac. 19.

defendants, after a hearing on the merits before the court without a jury, in an action to recover an interest in land; also, from an order of said court, Frater, J., entered January 28, 1905, denying an application to modify the judgment. Affirmed.

*W. H. Bogle,* for appellants.

*William Parmerlee (William G. Crosby,* of counsel), for respondents.

MOUNT, C. J.—Appellant Slater brought this action in equity, asking the court to adjudge him a four-tenths interest in certain lands, in King county. After issues were made upon the pleadings, and after a trial on the merits, the court, without making any findings of fact, entered a decree adjudging that appellant Slater was entitled to a four-tenths interest in the lands in question, on condition that within four months from the date of the decree he would repay to respondents the sum of $27,500 borrowed from them, and the further sum of $21,100, being four-tenths of the purchase price of the land paid by respondents, making a total of $48,600. From that decree Slater has appealed.

There is some dispute of the facts upon the record, but after carefully reading the same, we find the following to be the substance of the facts in the case: Prior to July, 1902, the heirs of John McHenry, deceased, were the owners of about one thousand, one hundred and seventeen acres of land, in sections 26, 30, 32, and 36, in township 21, north, of ranges 6 and 7, in King county, which lands are supposed to contain deposits of coal. J. B. Metcalfe was attorney in fact for the heirs of John McHenry, deceased. In May and June of 1902, appellant Slater, who is a resident of Washington, D. C., accompanied by respondent W. S. Bowen, went to the office of John Gribbel in Philadelphia, Pennsylvania, and there represented to Mr. Gribbel that they had an option to purchase the lands above mentioned; that they wanted to take up the option and acquire the title to said lands and

thereupon organize a corporation, to be known as the "Green River Coal Mining Company," with a capital stock of $5,000,000, and then bond the corporation for $300,000, which sum of money realized from the bonds was to be used in paying the purchase price of the land and equipping the corporation for mining coal in the state of Washington. They also represented that negotiations were under way for floating the said $300,000 worth of bonds, and that a trust company had promised to float the bonds as soon as title could be acquired to the land. They then proposed to Mr. Gribbel to borrow $5,000 from him, which money was to be used for the purpose of taking up the option on the land. Relying upon the representations as above stated, Mr. Gribbel advanced to Slater and Bowen $5,000, and took a contract by which they agreed to repay the said sum of $5,000 to Mr. Gribbel, as soon as money was realized upon the bonds above mentioned, and to issue to him one hundred thousand shares of fully paid stock in the corporation to be organized. They also obtained $5,000 from I. J. McGeogh of Philadelphia, and $10,000 from C. T. Bride of Washington, D. C., in the same way.

They then came to Seattle, whereupon appellant Slater employed one D. B. May to call upon J. B. Metcalfe for the purpose of purchasing the land above referred to. Mr. May did so, and on July 21, 1902, entered into a contract with Mr. Metcalfe by the terms of which contract Mr. Metcalfe, for the heirs of John McHenry, deceased, agreed to sell and convey said lands to said May for the sum of $35,000, Mr. May agreeing to assume and pay the back taxes which were then due and delinquent in a large amount. Slater furnished May $100, which was paid down on the contract. The balance was to be paid as soon as the title in fee, subject to the taxes, could be conveyed to Mr. May. Mr. May thereupon, on the same day, to wit, July 21, 1902, at Slater's request, entered into a contract with Slater, by which contract Slater agreed to pay to Mr. May the sum of $100,000 for the prop-

erty as follows: $15,000 cash at the date of the contract, $25,000 on September 1, 1902, and $60,000 within six months from the date of the contract. At the time this last named contract was entered into, a receipt for $15,000 was indorsed thereon by Mr. May, but no money was paid except the $100 which May paid to Mr. Metcalfe as above stated.

With this contract in their possession, Slater and Bowen returned to Pennsylvania, where they began to solicit funds which they stated were for the purpose of meeting the $25,000 payment due on September 1. They represented, that said D. B. May was the owner of the land; that Slater held a contract for the purchase thereof from May for $100,000; that $15,000 of this sum had been paid, and that the lands were valuable for deposits of coal contained therein; that they intended to form a corporation as hereinbefore stated, and that they had arranged with a New York trust company to float the bonds for $300,000 as soon as a good title was obtained to the lands. Upon the strength of these representations, they succeeded in borrowing about $36,000 from the respondents, in addition to the $20,000 hereinbefore referred to, issuing individual contracts promising to repay each person contributing money the amount he contributed as soon as the $300,000 in bonds were realized upon, and also promising to deliver to each person a stated number of shares of stock of the Green River Coal Company when the same should be incorporated. The whole of the money realized in this way was turned over to the appellant R. Y. Slater. No payments were made upon the contract between Slater and May, and no further payment was made upon the contract between May and Metcalfe.

In October, 1902, King county, in which the lands were located, instituted proceedings to foreclose its lien for taxes upon the lands. Thereupon Mr. Metcalfe demanded of Mr. May that he pay the taxes against the lands. Mr. May, in turn, demanded money of Slater for that purpose. Slater refused or neglected to advance any money for this purpose,

the attention of respondents was called to this foreclosure proceeding, and upon inquiry they first learned that May had no title to the lands, but held only a contract for the purchase thereof, and that he had paid only $100 thereon. They also learned that Slater had collected more than $50,000 in money for the purchase of the land, and had paid none of the purchase price. He refused to pay the purchase price, claiming he had paid $40,000 thereon, and refused to pay the taxes or to organize the corporation. Respondents, after learning of the fraud which had been perpetrated upon them, thereupon, in order to protect themselves against total loss of the money they had advanced to Slater, entered into negotiations with Mr. Metcalfe and Mr. May for the purchase of the lands, independently of Mr. Slater, which negotiations resulted, on January 5, 1905, in a deed from said May to the defendants—except May, McGeogh and Riegle—conveying the property to them in fee for the sum of $52,500. The appellants McGeogh and Riegle were advised of the purposes and objects of the other defendants in purchasing the property direct, and were invited to furnish their *pro rata* of the purchase price and share in the results, but they refused to do so. The evidence also shows that the whole sum of $56,400, collected by appellant Slater from the respondents, was converted by Slater to his own use, except the sum of six or seven thousand dollars, which was used in promoting his fraudulent scheme.

Appellant Slater, upon this appeal, argues that he is an equitable owner of the lands, because (1) the title of respondents was acquired from Mr. May, with whom he had a contract for the purchase thereof, which contract was known to respondents, and also because he had paid $40,000 thereon; (2) because he had not abandoned the contract; and (3) because respondents took title direct from May before the last payment upon Slater's contract became due, and were therefore estopped by their own deeds from contending that

their title is free from the equity of Slater, under the rule in *Brummett v. Campbell,* 32 Wash. 358, 73 Pac. 403.

It is sufficient answer to all these positions to say that Slater's fraud, which is clearly shown upon the record, gives him no standing in a court of equity. His acts from the beginning clearly show his fraudulent intention. He represented to respondent Gribbel in June, 1902, that he had an option on the land. This representation was absolutely false. He had no option of any kind at that time. He probably knew that he could acquire a title at that time, but he had none then. On July 21, 1902, he could have purchased the property for $35,000. He did not do so. Instead of that, he employed D. B. May, who knew nothing of the property and who had no money, to go to Mr. J. B. Metcalfe and purchase the property. May entered into a contract with Metcalfe for the purchase of the property for $35,000, paid $100 down with money furnished by appellant Slater, and then, at appellant's request, entered into a contract with appellant to sell the property to him for $100,000. This was a fraud upon the face of it. The contract recited that $15,000 was paid thereon. This was false. With this contract as a basis, appellant collected $36,000 more money from respondents, upon false and fraudulent representations. He made no payments upon the contract, except the sum of $100. He received and converted to his own use more than $50,000 by these fraudulent representations, and now, when the fraud is discovered by the persons defrauded, and they turn away from him and seek to protect themselves by purchasing the land for about one-half the sum he had agreed to pay for it, he asks a court of equity to adjudge him a four-tenths owner by reason of an alleged $40,000 payment which he never made, and to make which respondents furnished $40,000. But for the timely interference of respondents, the whole property would have been lost to them through foreclosure of delinquent taxes, and their only recourse would have been against Slater personally.

Under these conditions, the lower court certainly went as far as it was justified in going when it decreed that Slater should have a four-tenths interest in the land upon repayment of the money loaned to him and the payment of $21,100 additional, to the respondents, being four-tenths of the purchase price which respondents finally paid for the lands. Respondents have not appealed, and for that reason only we shall not modify the decree in their behalf. Appellants McGeogh and Riegle were invited to contribute to the purchase of the land by respondents, and share in the results, before the purchase was actually made. They declined, and outside parties were subsequently permitted to come in and assume the burden. They are therefore in no position to complain.

The judgment appealed from is affirmed, with costs against appellant Slater.

DUNBAR, ROOT, RUDKIN, FULLERTON, HADLEY and CROW, JJ., concur.